All right, Mr. Lee, we're ready when you are, sir. May I please the Court? Joshua Lee for the appellants Lori Williams and the Williams family in this wrongful death case. In my short time, I'll be talking about two issues. The first will be the improper jointer issue, and then I'll speak briefly about the 12B six merits if we get there. We begin with this Courts and Bank opinion in Smallwood, in which this Court noted that the removing party bears a heavy burden to prove that the jointer of in-state defendants was improper. And that is because under Article III, federal courts are courts of limited jurisdiction. Therefore, all doubts are resolved against removal, and any ambiguities with respect to the state law are resolved in favor of remand. Diversity was the only basis that the district court considered below, and diversity was lacking in this case. Tommy Brown, the plan manager, and Micah Fenton, the safety manager, are both Texas residents. Civil actions that are subject to original jurisdiction in federal court may be removed, but they shall be remanded if it appears the court lacks subject matter jurisdiction. And the improper jointer analysis that the district court applied will only apply if the plaintiff is unable to establish a cause of action against the non-diverse defendants. The test is focusing strictly on the allegations of the complaint, whether there is any possibility that the plaintiffs might recover against the in-state defendant. And so a finding of improper jointer is proper only if there is no possibility of recovery. So if the plaintiffs show that they're— Okay, but Brown and Fenton are different from Wingrove, right, because Wingrove's the one who had COVID, whereas Brown and Fenton, according to you, are the ones that kind of messed up getting that person, you know, letting that person in and so on and so forth. So those are different in terms of your argument about the jointer. Yes, Your Honor. So in the state court petition, there are some variations in the individual theories of the negligence claim. Fundamentally, they all derive from the duty that I'd like to talk about today, which is in a pandemic situation, Texas law has long imposed a duty upon individuals, a sick person, as well as private corporations, to prevent the spread of those infectious diseases. And if you look at the state court petition allegations, there are overlapping factual theories as between Wingrove, Fenton, and Brown, including common across all three of those defendants, the failure to follow government promulgated guidelines with respect to COVID-19 at this facility, which is same across all three of those individual defendants. And so if the plaintiff... What's your best case on COVID-19 that held that way? Specifically... Something from like 1902, that obviously wasn't COVID, so... Mercifully, Your Honor, this situation doesn't come up often, and that's a great thing for all of us. However, there are no cases in this circuit or any Texas precedent that we could find specifically applying those duties to COVID-19, which is why this prior pandemic of smallpox provides the best analog for evaluating that duty. And at the risk of speculating, we can talk about what the state court will develop in terms of the contours of that specific duty. We have some clues from sources like the Pandemic Liability Protection Act of what that duty may look like, but that is an issue for the state court to develop in the first instance, not something that the federal court should do when the appropriate remedy is remand in this situation. And so if the plaintiffs can show that they're correct on the existence of this duty or even possibly correct on the existence of the duty, then remand is the result in either situation because the defendant's burden is a heavy one since these federal courts are of limited jurisdiction. Um, plaintiffs allege negligence against Brown, Fenton, and Wingrove. And as I said earlier, the claims at issue included the failure to follow guidelines set forth by the CDC and WHO with respect to COVID-19 at the facility. And so under Texas law since 1902 and applied in 1906 Texas case, we have a duty recognized owed to the public by three types of people identified in those cases. Number one, by the sick individual themselves. Number two, by individuals over whom the sick person, excuse me, who have custody or control over that sick individual as well as private corporations over the acts of their agents of which if they become aware that their agents have one of these conditions. And that is the Rainey case that provides that the agency relationship two gives rise to the corporate duty. And so these allegations are sufficient under the principle that any doubts and ambiguities in the state law must be resolved in favor of remand. And so in the contours of that duty should be developed and analyzed by the state court in the first instance, not the federal district court. Here, the district court ruled that Brown, Fenton, and Wingrove owed no duty because that duty to provide a safe workplace belonged only to Tyson. And this duty was overly narrow in viewing and in applying the Leitch versus Hornsby Texas Supreme Court case. In Austin versus Kroger, the Texas Supreme Court in a certified question from this court expressly stated that a injury may have more than one proximate cause and that the additional relationships may give rise to additional duties. For example, in addition to the duty to provide a safe workplace, if the work is being done on the employer's premises, then a premises liability duty is also owed. And if undertakings are taken by the defense, then an additional independent undertaking duty might be owed by way of example. And so in the court below, the district court failed to consider the separate and independent duty under longstanding Texas law that there is a duty to the public to prevent the spread of infectious diseases in a pandemic situation. And that does not derive from the employment relationship. And so by limiting its analysis, the district court failed to consider the possibility of recovery against the in-state defendants. And because of a breach of that duty to prevent the spread of infectious disease by following and implementing those CDC guidelines that were promulgated well before this point in time. So you're saying even if it's kind of unclear, that would need to still be a remand because the state courts who should figure it out, not the federal court. That's exactly right, Your Honor. I think it should only be not remanded if it's very clear. I mean, is that what you're saying? That's exactly right, Your Honor. The standard is that there has to be no reasonable possibility of recovery against the in-state defendants. If there's any question about whether that duty exists and is owed and it's something that defeats the diversity jurisdiction, then the remand is the appropriate answer so that the state court can figure that out. And what's your best case from us on that point? The Smallwood case is an apt analogy for that case, Your Honor. OK. I'd like to briefly talk about the 12B6 issues. So the district court held that the claims against Tyson were preempted by the 1957 Poultry Products Inspection Act. And the PPIA was enacted to ensure the quality of these poultry products and specifically to prevent adulteration and misbranding. That's within the statutory purpose section that that act includes. And so the preemptive effect of the PPIA needs to be limited to its scope if this court— You're saying it's just dealing with bad food, not somebody having COVID or some other issue? Correct, Your Honor. It has to do with making sure that the integrity of the poultry products themselves are preserved. It has nothing to do with worker safety. And I can give some examples of that. If we look at the regulations themselves concerning sick individuals, it actually has a provision about how sick people must be excluded from these facilities. However, the regulation specifically states that that should happen where the diseases, quote, could result in product adulteration and the creation of unsanitary conditions. Nothing to do with worker safety. It's about the sanitary conditions that would contribute to the food safety. Similarly, there are similar provisions with respect to clothing and non-food contact surfaces that also have that qualifying language that those surfaces and clothing must be cleaned, quote, to prevent adulteration of product and the creation of unsanitary conditions, which is clear evidence that the scope, the preemptive scope of the statute in these regulations concerns food safety. Nothing in the PPIA expresses an intention to supplant the historic police powers of the state to regulate worker safety or premises safety. Rather, it's to provide a uniform enforcement of consumer safety and food safety. And those are the regulatory standards that Tyson has invoked in this case. The district court in the Glenn case has very good reasoning on this point. This court considered the Glenn case. However, while affirming the district court's findings did not reach the PPIA issues. Nevertheless, this court remanded that case to the state court, I think, on the basis of finding no federal officer jurisdiction. Um, I feel like I need to talk about the Pandemic Protection Liability Act because it's featured so prominently in the Appley's brief. The district court expressly stated its dismissal was based on the PPIA preemption issue and stated expressly did not reach the Pandemic Liability Protection Act defense. But nevertheless, I think that the appellants have met their burden to plead sufficiently under the Pandemic Protection Liability Act defense in any event. The plaintiff's amended complaint included sufficient factual material to show Tyson's knowing conduct, its disregard for government promulgated regulations, the refusal to implement those, as well as the opportunity and inspection to, the opportunity and ability, excuse me, to do so. And reading the amended complaint in comparison with the statutory language will show that the standards were met. One, this court has decided in one case, the Johnson case, that the pleadings were insufficient to meet the standards of the Pandemic Liability Protection Act. However, this case is distinguishable from Johnson specifically on the fact that the, unfortunately, appellants in that case were unable to even identify a date on which they the transmission of COVID-19 occurred. Whereas in this case, we have a clear timeline of Mr. Williams' comings and goings from the facility, the date on which the infected individual arrived at the facility in late November, the fact that he got a COVID test the day after that incident, as well as the fact that he did not travel anywhere other than from home to work during that period. And so the only conceivable area where he could have received that infection, that transmission, would have been at the Tyson facility, at least to the preponderance standard that would be required. And so the Johnson case would not apply here. And finally, the district court did not approve an amendment that the plaintiffs asked for in the court below, but that is simply because the district court stated that those issues in the amendment were related to this Pandemic Liability Protection Act defense rather than the preemption issues on which it decided the case. And so for that reason, the court did not consider the amendment. But if this court reaches that Pandemic Liability Protection defense, then the amended language in the record should be considered as well. And unless the court has any further questions, I'll give back some of the court's time. All right. Thank you, sir. May it please the Court. I'm Michael Houston of Perkins Coie on behalf of the defendants' appellees. The district court correctly exercised federal jurisdiction in this case, and it correctly dismissed the action for failure to state a claim for relief. Jurisdiction was proper because Brown and Fenton, who were managers at the plant and who were the only non-diverse defendants in the case, were improperly joined. Plaintiffs have no non-frivolous theories of relief against Brown and Fenton. That's because the Texas Supreme Court has been clear, most notably in the Leach case, that managers like Brown and Fenton are not liable for allegedly failing to prevent a workplace injury. Instead, the Texas court has held that the duty to ensure a safe workplace rests solely with the employer, which is Tyson. So Tyson is the proper defendant. Brown and Fenton are not. On the merits, the plaintiff's suit fails for multiple reasons. They cannot overcome Texas's Pandemic Liability Protection Act, enacted for this specific crisis to minimize the risks of otherwise ruinous liability. And their claims are preempted by federal law, as the district court correctly determined. On the PLPA, the complaint here fails for largely the same reason why this court affirmed dismissal of the complaint in Johnson. The plaintiffs have never plausibly alleged that the defendants knew Riley Wingrove had COVID and yet knowingly caused Mr. Williams to contract it. And on preemption, the Poultry Products Inspection Act enacts a broad-sweeping preemptive mandate that blocks attempts by individual local authorities at the county, state, or city level to impose safety standards at meatpacking plants like Tyson's. That preemption is absolutely essential because we need uniform federal regulators in order to ensure that we keep food on grocery store shelves. And that was an especially important issue during this once-in-a-century pandemic. For those reasons, the district court's judgment should be affirmed. I, of course, welcome any of the court's questions. Otherwise, I think I'll just begin by talking about some of the points that my friend raised on the other side with respect to jurisdiction. So as I mentioned, Texas law is clear. When we're thinking about diversity jurisdiction, it's important to focus on Brown and Fenton because they are the only defendants who defeat potentially diversity jurisdiction. But as I mentioned, there are no non-frivolous claims that the plaintiff can raise against Brown and Fenton. Leach is directly on point. That is a recent decision of the Texas Supreme Court that goes to this question, whether you can plead a claim for relief against the individual employee managers for a workplace injury as opposed to a claim against the employer itself. And the Texas Supreme Court really couldn't be more clear that the answer is no. And I think the reason, the easiest reason why the court can be certain that the claims that the plaintiff has against Brown and Fenton are really just synonymous with the claims that the plaintiff has against Tyson as the employer is to take a look at record page 385 to 387. This is the amended complaint. The plaintiffs don't even segregate their allegations with respect to Brown and Fenton from Tyson. They lump them all together in a single count. And they say Brown, Fenton, and Tyson are all collectively responsible for failing to provide a safe workplace. Leach from the Texas Supreme Court says that won't work. You can plead those claims against Tyson, the employer. You cannot plead them against Brown and Fenton. The only rebuttal that my friend has offered in their briefing and up here today is to a 1906 case involving smallpox. I think nothing in that case, in the dicta, that the one sentence of dicta that the plaintiffs have pointed to from it can supersede the clear holding of Leach about this specific issue, liability on managers. The railroad cases involving smallpox that the plaintiffs cite did not have anything to do with individual employee defendants. The railroads were the defendants in those cases. And those cases stand for the proposition that the employers, in the smallpox cases, the railroads, here, Tyson, the employers have the duty to guard against the spread of infectious disease. But there were no defendants akin to Brown and Fenton in those cases. And so they certainly cannot possibly overcome Leach, where the Texas Supreme Court has spoken directly to the question of whether a manager like Brown and Fenton can be held liable and has conclusively held that they cannot be. The only other argument that plaintiffs raised in defense of federal, in opposition to federal jurisdiction was the common defense rule of Smallwood. I don't think that that rule is even close to applicable here for essentially the reason that Judge Haynes, your question to my friend, described. The common defense occurs only where the defense raised against the diverse defendant and the resident defendant are exactly the same. But that's not the case here. As Your Honor observed, the plaintiffs have quite different theories of liability against Brown and Fenton and Tyson on the one hand. That's about the alleged failure to provide a safe workplace. They have a very different theory of liability against Mr. Wingrove as an individual who they allege that he is liable because he directly transmitted COVID-19 to Mr. Williams. That's their allegation. So again, very different set of theory of liability, different defenses that the defendants would raise, Brown and Fenton versus Wingrove would raise. And under this court's decision in Boone, the fact that we ultimately succeeded in showing that all of the claims fail to state a claim for relief against all defendants does not mean that there was a common defense problem or that jurisdiction was absent. Even if there were any argument about an improper, about a common defense issue, I think you can set it aside because of the Caterpillar case from the Supreme Court, which holds that as long as the court can be confident that there was federal jurisdiction at the time the judgment was entered, the court is not going to throw out the case afterward. This is a ready-made situation for application of the Caterpillar rule because by the time we got to judgment of the district court, the plaintiff had amended the complaint to add Tyson as a defendant. And obviously, the claims and defenses that the plaintiff has against Brown and Fenton and Wingrove are different from the claims and defenses against Tyson, the direct employer. So I think all of those reasons explain why diversity jurisdiction was proper in this case. Moving to the merits and why the plaintiffs failed to state— Well, I just want to say one thing on that. My experience with these not remanding even when there's somebody from the same state is because they added that one guy because they wanted to keep it from going up. But here, Tyson wasn't even in the case when they were in state court. So the notion that they were trying to just throw in some Texans to keep it in state court does not seem accurate here. I respect—I think I respectfully disagree, Your Honor. I don't think—once you read Leach, it is abundantly clear that Brown and Fenton simply have no business being in this lawsuit. Now, I can't tell, Your Honor, why the plaintiffs chose initially not to name Tyson as a defendant. I think you'd have to direct that question to my friend. But I do think what is clear is that Brown and Fenton were added to the case for the purpose of attempting to defeat diversity jurisdiction. Now, ultimately, as the Court has explained in Smallwood, it's not a—remand, an improper joinder, does not turn on the motive of the plaintiff. I mean, it doesn't directly, but it does seem to come up a lot. It often—I agree, certainly, with Your Honor, that the common situation in which you get an improper joinder situation is one where there's an intentional attempt to defeat diversity jurisdiction. I think the Court in Smallwood was clear that you don't have to actually show a sort of state-of-mind element. You just have to look at, is there a non—is there a claim that could state a claim for relief against the non-diverse defendants? Here, Brown and Wingrove. And my—the simple answer to the Court is that Leach conclusively establishes that there is no non-frivolous theory of relief that these plaintiffs have against Brown and Fenton. The only appropriate defendant is Tyson. And I think that's exactly why the plaintiffs quickly amended their complaint when we moved to dismiss the initial complaint to add Tyson as a defendant. And so whatever might have been, you know, where the case started, where we've ended up is a situation where you have the right defendant, Tyson, and Mr. Wingrove, and there's clear diversity, complete diversity among all of those parties. Explaining why the district court correctly dismissed the complaint for failure to claim. I think the easiest place to—the easiest way to resolve this case is under the Texas Pandemic Liability Protection Act, because it's so directly on point, and also because this Court has already dismissed very similar allegations in the Johnson case. So I think if the Court compares the allegations in this complaint to the allegations that were deemed insufficient in Johnson, you'll see that there's a great deal of similarity, and I think that the Texas PLPA applies here for the same reason it applied there. The PLPA— The district court did not address it, right? That's correct, Your Honor. Ordinarily, I mean, even if you're right, we say we're a court of review and not first view. So, you know, why would we correctorally just reach and get it and decide, I mean, get rid of the case, but that's not generally the way we would do it. You know, we'd be back to the district court to look at it, and that's another I certainly take Your Honor's point about that. I do think this situation is a little different from the normal one, because this Court has already spoken to the PLPA in Johnson, and that was the district court's reason for declining to rule on the PLPA. I read the district court to essentially have said, the Fifth Circuit has already indicated that these allegations fail under the PLPA, but just for good measure, I'm going to go ahead and confront the other defense, which is the preemption defense. So I think the district court was endeavoring to be comprehensive in its reasoning, precisely because it appreciated that this Court had already ruled in Johnson on the PLPA. I also think the PLPA is an appropriate place for this Court to start on the merits, because again, it was designed specifically for this pandemic. And so you don't need to get into a question about the sweep of federal preemption more generally. I think it's appropriate as an exercise of judicial discretion for the Court to say, the Texas legislature has spoken specifically to the question, what should the standard of liability be when you're attempting to charge a defendant with transmitting COVID-19? And the Texas legislature has enacted rigorous standards of knowledge and causation. You have to plead that the defendant knowingly failed to warn or remediate a condition, that the defendant knew was likely to result in exposure, and that you did all of that before the plaintiff came in contact with the disease. It's the emphasis repeatedly in the legislative text on the knowledge of the defendant really amounts to a recklessness standard. Put that next to the allegations that the plaintiff makes in this case. Remember, under the statute, the plaintiff has to allege that the defendant knowingly failed to remediate a condition before the plaintiff came into contact with the disease. Here's what the plaintiffs said at paragraph 17, record 44. This is also an opening brief of four. They allege that Riley Wingrove tested positive for COVID-19 on November 20, 2020. And here's what they say. Quote, by that date, Mr. Williams was already experiencing COVID-19 symptoms, and Mr. Williams tested positive the next day. That admission by the plaintiffs is absolutely critical, and it completely defeats their ability to plausibly allege that these defendants knowingly gave COVID-19 to Mr. Williams. Why is that so? Because at the time that Mr. Wingrove allegedly tested positive, discovered that he had COVID, November 20, Mr. Williams already had COVID. That's what the plaintiffs say. Even before that happened, that's the test of Riley Wingrove. It's the first time anybody could have the knowledge that's required by the PLPA that there's a COVID issue with respect to him specifically. But by that date, Mr. Williams, quote, has already been experiencing COVID symptoms. And he tests positive the very next day. And as the court will no doubt remember, this was a disease that you can—back in those days, we didn't discover we had it until several days after we had contracted it. So I think for all those reasons, the plaintiffs are never going to plausibly be able to show that either Tyson or Mr. Wingrove knew they had COVID and yet did something that they knew would cause Mr. Williams to contract it. That's the allegations that my friend mentioned at the podium today with respect to federal and state guidelines. There's just a generic reference at paragraph 15, record 384, to, quote, guidelines issued by the WHO and the CDC. That's it. That's all they've pleaded, that Tyson violated guidelines issued by the WHO and CDC. They don't attempt to explain what those guidelines were, how Tyson violated them, what Tyson should have done that it was required to do. But of course, the WHO is not actually a governing body in this country. It doesn't impose binding law. So I don't think that—even if there were a WHO guideline, I don't think that would be relevant. But they certainly don't point to any direct CDC instruction legal requirement that Tyson knowingly violated. And that's what they would have to plead in order to overcome the PLPA. And again, that's for a very important reason. It's because the Texas legislature recognized that without imposing these rigorous standards of knowledge and causation, you would have runaway liability. There were a million cases of COVID in Texas as of November 2020. And so if every employer who had an employee who caught COVID allegedly at their job could bring a lawsuit under Texas conventional negligence law, the businesses of the state would be bankrupt. The legislature thought that was not the right idea. Let me turn to the Poultry Products Inspection Act, which of course was the basis of the district court's decision. We think the district court got this right. And it provides yet another independent basis for the court to affirm the judgment in addition to Johnson and its application of the PLPA. The PPIA, the Poultry Products Inspection Act, essentially forbids any state laws that are, quote, within the scope of federal law regarding the premises, facilities, and operations of a plant like this. That's 21 U.S.C. 467E. And as the Supreme Court explained in Harris, the operative question for preemption is could the federal regulator issue regulations mandating the duty that the plaintiff seeks to impose here? It is a very broad preemptive provision. Intentionally so. Obviously, the federal regulator that governs Tyson's plants could impose legal requirements on Tyson with respect to things like masks, personal protective equipment, reporting of illness. The Supreme Court has said over and over, you know, preemption in this context, preempting state law is extremely strong stuff. I mean, extremely strong stuff. I agree with you. We don't have said that over and over to say it might look like it, but go very, very slowly. And so, clearly this act dealt with poultry, dealt with food. And so, even though one can reason out that it might apply to other matters, still the District Court, in its first instance, in effect stretched preemption beyond poultry in that sense. So, I hear your argument saying, yeah, it's spot on, but what do you do about the teaching of hold them up, go slow if you're going to preempt state law? The District Court kind of did it, but what do you say? I think what I would say, Your Honor, is that this preemption provision has been recognized to be extremely broad. Congress wanted a uniform federal set of regulations governing these plants, and it wanted a federal regulator. With your policy argument, I'm back at square one. You know, from your argument, you could take a case which you would say I'm oversimplifying, might be a slam dunk, you know, based on all the law to deal with the case, but yet you want us to go way out of here on preemptions and expand it into areas where there's no cases that says this. And all of a sudden, this case becomes the highlight for that. You follow what I'm saying? I do, Your Honor. And I think what I would say is, again, combine the national meat case from the Supreme Court of the United States, analyzing this preemption provision, recognizing the broad sweep of its statutory text. And I don't think that the Court needs to say the preemptive force is such that there can never be a state law cause of action related to something that happens in a meatpacking plant. That's not what we're asking the Court to hold. That's not what the district court held. What the district court held is when the plaintiffs have come to the court and said, Tyson, you need to have different standards with respect to PPE, personal protective equipment. You need to have different standards with regard to testing for illnesses and reporting for illnesses. Those are all things that the federal regulator that supervises this plant could make regulations on and indeed has made regulations on, as we explained in our brief. So I think all you need to say is we know that the federal regulator is attuned to what it takes to keep a safe and healthy workplace when you are packing meat. And it's critically important that we let the federal regulator be in charge of that issue. And the reason for that, again, is because having a uniform federal set of regulations overseen and implemented by an expert federal agency is what ensures that we keep grocery store shelves stocked in this country. And we can't live in a world where every single individual state, county, and city is enacting their own vision of what workplace safety hazards would be like because the result of that would have been paralysis. It would have been an inability of this plant and this company to feed the American people. And for all those reasons, the district court correctly determined that the complaint fails to state a claim for relief, and we'd ask for that judgment to be affirmed. Thank you. Thank you, sir. Back to you, Mr. Lee, for rebuttal. So I'd like to start by going back to the standard on the improper jointer, which is that the plaintiffs have possibly shown a right of recovery, or that if plaintiffs are correct on their right of recovery, then this case should be remanded. And there is a question about whether there is a separate and independent duty owed to members of the public, not just to workers, but to members of the public as a separate duty to prevent the spread of infectious disease in a pandemic situation. But even if the defendants had carried their heavy burden to show that there was no possibility of recovery from the in-state defendants, then the district court should have remanded nonetheless under this court's Smallwood analysis because a common defense would have precluded a piecemeal dismissal on the merits. But how can you win in state or federal court, even if we sent it back, if, you know, the fact was Wilson was already sick when Wingrove was tested positive? Yes, Your Honor. That point is actually not, with all respect for counsel, the pandemic liability— I'm sorry, Williams, not Wilson. The Pandemic Liability Protection Act's knowledge provisions are a little bit different than what counsel represented. And the knowing failure or remediation prong requires that this person knew there was a likelihood of exposure to the disease and that the individual knew that someone like Mr. Williams was more likely than not to come into contact with the condition. So it's not a requirement under the Pandemic Liability Protection Act that Tyson knew Wingrove had the disease. Its knowledge burden is whether it knew that there was a likelihood of exposure and that the exposee was more likely to come into contact with the condition. There's also a second test under the Pandemic Liability Protection Act having to do specifically with failing to implement government promulgated standards. And that has a knowledge component as well, but the knowledge component there has to do with knowingly failing to implement those standards and guidance and that they had the reasonable opportunity and ability to do so. So there's actually two prongs under the Pandemic Liability Protection Act that could apply equally to all of the defendants in this case. So a smallwood analysis requires, importantly, that the improper joinder question be decided at the time of the removal. As Judge Haynes, you noted, at the time that this case was removed, the only defendants in this case were Mr. Brown, Mr. Fenn, and Mr. Wingrove. Mr. Wingrove, in fact, is not even an in-state defendant. He is a Louisiana citizen and a diverse party. And so this is not a situation, as Your Honor pointed out, where we're just tagging along plant managers in order to try to keep Tyson in state court. This is a situation where all of the culpable individuals have been joined into the case under this independent duty of failing to prevent the spread of infectious disease by implementing, following, enforcing government promulgated guidance. Looking at this case, at the time of the removal, the two in-state defendants were dismissed on the basis that the only duty that they owed was the duty to provide a safe workplace. That was the district court's reasoning. And then later on, after the improper joinder dismissal as part of its final judgment, the district court dismissed Wingrove on precisely that same basis, stating that Wingrove, too, did not owe a duty to provide a safe workplace. The reason why the Caterpillar exception to the time of filing rule does not apply in this case for two reasons. Number one, that case provides that there is a voluntary, involuntary component to amending the complaint to fix the jurisdictional issue, which the plaintiffs are not guilty of in this case. The amended complaint retained claims against both the state, in-state, and diverse defendants, and never asserted any federal claims or otherwise fixed jurisdiction in a way that could be considered voluntary. And second of all, the animating concerns in Caterpillar concerning economy, finality, and the preservation of resources are simply not present in a case where we've only gone up to the pleadings and no further. Caterpillar had to do with all the wasted resources when you go all the way through a trial on the merits of the case. And so, I see that I'm out of time. If there are any other questions, I'm happy to answer them otherwise. Thank you, judges. All right. Thank you. The case will be submitted. Before the panel takes up the third case, we'll stand in about a ten-minute recess and then we'll be back on the bench to take up the third and fourth cases.